IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN UNIVERSITY OF ANTIGUA<br>COLLEGE OF MEDICINE; ET AL. | | PLAINTIFFS |
| v. | No. 4:09-CV-306 (DPM) | |
| ARKANSAS STATE MEDICAL BOARD; ET AL. | | DEFENDANTS |

## SETTLEMENT STIPULATION

This Settlement Stipulation is intended to settle all claims between Plaintiffs, American University of Antigua College of Medicine ("AUA"), Shreekanth Cheruku, Anjan Patel, Amber Milward, and Justin T. Harney, and Defendants, Arkansas State Medical Board ("ASMB"), Trent P. Pierce, M.D., Joseph M. Beck, II, M.D., Bobby E. Cogburn, M.D., Anne Britton, Omar T. Atiq, M.D., Jim C. Citty, M.D., William F. Dudding, M.D., Roger Harmon, P.D., Patty K. Pettway, D.O., Douglas F. Smart, M.D., John B. Weiss, M.D., and Harold B. Betton, M.D., (collectively, the "Individual Board Members"), arising out of the ASMB's inclusion of AUA on its list of "Disapproved Schools."

1. AUA is a medical school chartered by the government of Antigua and Barbuda.

2. Plaintiff Shreekanth Cheruku is a graduate of AUA; Plaintiffs Anjan Patel, Amber Milward and Justin T. Harney are each students enrolled at AUA.

3. In June, 2008, the ASMB amended its "Regulation No. 3, Unrestricted Licensure For Graduates of Foreign Medical Schools," setting forth certain new requirements for graduates of foreign medical schools. One such requirement was that an applicant for licensure in Arkansas must not be a graduate of a school listed on the "Disapproved Schools" list created by the ASMB. Inclusion on the list of "Disapproved Schools" could be based on several factors, one being whether there was "[i]nformation from at least two (2) sister State Medical Licensure

Boards that reflect[ed] that a Foreign Medical School [was] not approved or recognized as a medical school needed for licensure of physicians or for other requirements of that Board."

4. The Medical Licensure Boards of most states have no system of evaluation, approval, recognition or disapproval of international medical schools. The Medical Board of California has enacted regulations establishing a system for approval and disapproval of international medical schools and has compiled lists of "recognized" and "disapproved" international medical schools. Some state Medical Licensure Boards rely on those lists to determine whether to grant or refuse licensure to graduates of international medical schools.

5. An unfortunate result of the June, 2008 Regulation No. 3 was that the ASMB was required to regard as "disapproved" and automatically to add to its list of "Disapproved Schools" any international medical school that was not on the Medical Board of California's list of "recognized schools" even if the school had not been disapproved or even evaluated by the Medical Board of California.

6. The effect of the foregoing was that graduates of international medical schools would be denied licensure to practice medicine merely because their schools had not been included on the Medical Board of California's list of "recognized schools." This result also affected those graduates' ability to engage in post graduate medical education as residents in the state.

7. As of the date that this action was commenced by Plaintiffs in April 2009, AUA had applied to the Medical Board of California for inclusion on its list of "recognized schools." As of the date of this Stipulation, the Medical Board of California has not made a determination on AUA's application.

8. In determining to amend Regulation No. 3 and adopt the list of "recognized medical schools" compiled and maintained by the Medical Board of California as a criteria for granting or denying licenses to practice medicine in Arkansas to graduates of international medical schools, the ASMB relied on information and documents from the Medical Board of California which represented that, except for certain exempt schools, it had compiled and maintained its list of "recognized medical schools" by and through intensive investigation, assessment and evaluation of each and every school on the list.

9. As to those international medical schools on the Medical Board of California's list of "recognized medical schools" that it asserted were exempt from its scrutiny, the Medical Board of California represented, and ASMB relied on the representation, that: a) each of those schools was owned by the government of the country in which it was located, b) each of those governments was a member of the international organization known as the Organization for Economic Cooperation and Development, and c) the prime purpose of each of the medical schools was educating its own citizens to practice medicine in the country in which it was located.

10. At the outset of this litigation, the list of "recognized medical schools" compiled and maintained by the Medical Board of California included approximately 1309 "international" (i.e., not US or Canadian) schools. The list also purported to include all of the 147 schools then located in the United States and Canada, for a total of approximately 1456 schools.

11. During the course of discovery in this litigation, the ASMB learned through documents and depositions that all but 14 of the international medical schools on the Medical Board of California's list of "recognized medical schools" were deemed exempt, and therefore, received no scrutiny, assessment or evaluation to have been included on the list, notwithstanding

that most did not meet the criteria set forth above to qualify as exempt and did not meet the Medical Board of California's own regulations for such inclusion in that:

    a. some schools were not owned by the governments in which they were located, almost none of the governments of the countries where those schools were located were, or had ever been, members of the Organization for Economic Cooperation and Development, and the Medical Board of California had no information at all about what the purposes or missions of any of those schools were or the composition of the citizenship of their student bodies.

    b. the Medical Board of California had no information as to the origins of its original list of "recognized medical schools"; how that list was compiled, who compiled it, what criteria were used to determine which schools were included on the list or any other such information about the list.

    c. there were some schools on the original list of "recognized medical schools" compiled and maintained by the Medical Board of California about which that Board had obtained substantial information that the schools were unfit to educate medical students but that, nevertheless, were not removed from the list of "recognized medical schools". The Medical Board of California so acted, or failed to act, notwithstanding that numerous graduates of those schools regularly applied for, and were granted, licensure to practice medicine in the State of California by the State's Board.

    d. the governments of the countries where some of the schools on the Medical Board of California's list of "recognized medical schools" were located had no system of review or accreditation of medical schools in those countries, and those governments that did, had accreditation standards that were not mandatory in order for the schools to continue to graduate students or were not in any manner favorably comparable to the standards to which US schools (and schools that the Medical Board of California required to undergo scrutiny assessment and evaluation) are held.

    e. between the date that this lawsuit was commenced and the present, more than 60 international schools were added to the list of "recognized medical schools" by low and mid level staff at the Medical Board of California without any determination or involvement of any member of the State Medical Board, without any scrutiny, evaluation or review by anyone at the State Medical Board on any level, and with scant or no information as to whether those schools satisfied any of the criteria for exemption from such scrutiny, assessment and evaluation.

  12. During the course of discovery in this litigation, the ASMB also learned through documents and depositions that:

    a. of the currently constituted list of approximately 1382 international schools on the Medical Board of California's list of "recognized medical schools" as of July 13, 2010, the Medical Board of California had actually scrutinized, assessed and evaluated only 14 schools, and made site visits to

only five. Of these five schools, all are located in the Caribbean and unlike most of the approximately 1377 other international schools on the list, have student bodies comprised primarily of US citizens and residents.

b.  the nine schools that the Medical Board of California assessed, evaluated and approved without site visits were located, with one exception (Cuba) in Eastern European countries. These schools were, and are, "for profit", taught their students in English notwithstanding that English was, and is, not the native language of those countries, and were established in order to raise money to support the financially strapped not for profit medical school programs of those schools that were, and are, taught in the native language of the countries in which those schools were, and are, located. Further, although the Medical Board of California's scrutiny, assessment and evaluation of those schools revealed significant deficiencies and left many questions as to the quality of the schools' educational programs, the Medical Board of California, nevertheless, determined to add those schools to its list of "recognized medical schools" without a site visit.

c.  despite the Medical Board of California's representations that it was financially and otherwise able to appropriately, fairly, competently and reasonably evaluate and accredit the schools on its lists of "recognized" and "disapproved" medical schools, it lacked, and lacks, the resources to do so.

d.  schools that agreed to undergo the Medical Board of California's process of scrutiny, assessment and evaluation, such as it was, and is, were and are

       required to wait years for a determination. The State government had prohibited travel for site visits without special permission of the Governor, and the process for approval of the Governor takes in some instances over a year to complete, notwithstanding that the schools to be evaluated are required to pay all of the costs of the site visits.

  e. AUA first submitted an application to the Medical Board of California in 2008. As of today's date, as noted above, the Medical Board of California has not completed its evaluation and assessment.

  f. despite the Medical Board of California's representations that determinations as to which schools that it scrutinizes would require site visits and which would not are based upon review of the schools' application, supporting evidence and documentation, the Medical Board of California determined that it would require AUA to undergo site visits of its campus and affiliated US based teaching hospitals before it ever reviewed or evaluated AUA's application or the evidence and documentation sought by the Board and provided by AUA.

  g. the Medical Board of California's determination that AUA would be required to undergo site visits before any determination was made on its application for approval was based upon the fact that the school had a campus located in the Caribbean and had a student body comprised principally of Americans.

13.     Because the ASMB recognized that its reliance on the Medical Board of California's list of "recognized" and "disapproved" medical schools would result in the unfair

and unreasonable denial of licenses to practice medicine in the State to graduates of AUA and, perhaps, to graduates of other international medical schools not on the Medical Board of California's list of "recognized schools" who were otherwise well qualified to practice medicine in Arkansas, the ASMB voluntarily ceased relying on the Medical Board of California's lists of "recognized" and "disapproved" medical schools and its own list of "Disapproved Schools" to evaluate whether to license graduates of foreign medical schools on April 8, 2010, by amending Regulation No. 3.

14. Instead, the ASMB returned to evaluating a graduate of a foreign medical school on the basis of individual merit, including requirements of ECFMG Certification, successful completion of the USMLE steps in a certain number of tries and during certain time limits, and successful completion of residency training in the US, among other criteria specifically set forth in amended "Regulation No. 3—Unrestricted Licensure for Graduates of Foreign Medical Schools."

15. The practice of the Medical Board of California in failing to evaluate the vast majority of the schools on its list of "recognized schools" and of holding schools whose student bodies were, and are, comprised of Americans to different and higher standards than those to which schools whose student bodies are principally comprised of citizens of countries other than the United States renders reliance by the ASMB on the Medical Board of California's lists unworkable to ensure the best interests of the citizens of Arkansas.

16. Given the practical limitations and the arbitrariness of having and relying on the "recognized" and "disapproved" lists of the Medical Board of California, the problems of which are detailed above, the ASMB will not return to evaluating the graduates of foreign medical

schools based on the Medical Board of California's current system of recognized lists, disapproved lists, or unrecognized foreign medical schools.

17. In light of this representation and based upon it, Plaintiffs have agreed to release, acquit, and forever discharge Defendants and their board members, agents, attorneys, and successors in interest, all in both their respective individual and official capacities, from any and all claims, damages, liabilities, attorneys' fees, expenses, and costs based on the claims made in the above styled lawsuit, or on the circumstances described in the complaint and all amendments thereto, including all claims arising out of the ASMB's inclusion of AUA on its list of "Disapproved Schools."

18. Likewise, Defendants agree to release, acquit and forever discharge Plaintiffs, their officers, directors, stockholders, attorneys and agents, parent companies, and successors in interest who might be liable, from all claims, damages, attorneys' fees, costs and expenses of whatever nature they may have arising out of the above styled lawsuit, or on the circumstances described in the complaint and all amendments thereto, or ASMB's inclusion of AUA on its list of "Disapproved Schools."

19. It is agreed that no party admits liability or damages to any party, person or nonparty as a result of the events that form the basis of the above styled lawsuit, or the ASMB's inclusion of AUA on its list of "Disapproved Schools."

20. Plaintiffs agree to dismiss their claims and causes of action against Defendants in the above styled lawsuit with prejudice. The parties agree to take all reasonable actions and execute all documents necessary to consummate that dismissal.

21. Each party shall bear its own costs, attorneys' fees, and expenses in connection with this matter.

22. No statements or representations other than those made in this Settlement Stipulation have been made by either party to induce the other party to enter into this Settlement Stipulation, which contains the entire agreement between the parties and which supersedes all prior negotiations, discussions, representations, statements, and agreements. This Settlement Stipulation may not be modified or amended without the express written agreement of each party.

23. VOLUNTARY AGREEMENT. The plaintiffs and defendants acknowledge that each has read this Settlement Stipulation, that each has had the opportunity to consult with legal counsel of their choosing concerning the advisability, meaning and effect of this Settlement Stipulation, and that each has signed this Settlement Stipulation voluntarily and without duress.

24. NO RESCISSION FOR MISTAKE. The plaintiffs and defendants acknowledge that each has had the opportunity to investigate the facts and law relating to the claims raised in the above-captioned lawsuit and any additionally waived and released claims to the extent each deems necessary and appropriate. The plaintiffs and defendants assume the risk of any mistake of fact or law and agree that any mistake of fact or law shall not be grounds for rescission or modification of any part of this Settlement Stipulation.

25. SUCCESSORS AND ASSIGNS. This Settlement Stipulation shall be binding upon the plaintiffs and the defendants and each of their respective heirs, descendants, successors and assigns.

26. EFFECTIVE DATE. This Settlement Stipulation shall not become effective until such approval by the Director of the Department of Finance & Administration as may be required, and such review by any committee or committees of the Arkansas General Assembly as may be required.

27. COUNTERPARTS. This Settlement Stipulation may be executed in counterparts and the counterparts, taken together, will have binding effect.

28. The signatories below represent and warrant that they have authority to sign this settlement stipulation on behalf of all Plaintiffs and all Defendants, respectively, and to bind all parties on whose behalf they sign.

29. This settlement stipulation shall be governed by Arkansas law.

Executed on this the __12__ day of __April__, 2011.

_____
Duly Authorized Representative of all Defendants

The State of Arkansas  §
                       §
County of __Crittenden__ §

Before me, the undersigned authority, on this day personally appeared __Trent P. Pierce, M.D.__ the __Chairman__ of the Arkansas State Medical Board, and as such a duly authorized representative of The Arkansas State Medical Board, established by the General Assembly of the State of Arkansas as a regulatory board, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she signed the same as the act and deed of The Arkansas State Medical Board, and that he/she has authority to act for said entity for the purpose and consideration therein expressed and in the capacity therein expressed, and for all Defendants.

Given under my hand and seal of office, this __12th__ day of __April__, 2011.

_____
Notary Public

My Commission Expires:

__1-12-14__

PAULA J. PARKER
Crittenden County
My Commission Expires
January 12, 2014

12

Executed on this the __8th__ day of __April__, 2011.

_____
Duly Authorized Representative of all Plaintiffs

The State of __Arkansas__ §
County of __Pulaski__ §
§

Before me, the undersigned authority, on this day personally appeared __Leonard Sclafani__, the __Sr. V.P. / Gen. Counsel__ of the American University of Antigua College of Medicine, and as such a duly authorized representative of the American University of Antigua College of Medicine, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she signed the same as the act and deed of the American University of Antigua College of Medicine, and that he/she has authority to act for said entity for the purpose and consideration therein expressed and in the capacity therein expressed, and for all Plaintiffs.

Given under my hand and seal of office, this __8th__ day of __April__, 2011.

_____
Robin Brady
Notary Public

My Commission Expires:

__10-12-2016__

OFFICIAL SEAL
ROBIN D. BRADY
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires: 10-12-2016
COMMISSION # 12350861

13